UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CINDY M. WHITE,<br><br>            Plaintiff,<br><br>     v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>            Defendant. | CV 12-3033 ABC (PLAx)<br><br>ORDER RE: DEFENDANT'S MOTION TO DISMISS |

   Pending before the Court is Defendant JP Morgan Chase Bank, N.A.'s ("Chase's") Motion to Dismiss, filed on May 3, 2012. (Docket No. 11.)  Plaintiff Cindy M. White filed a belated opposition on May 30, 2012, and Chase replied on June 4, 2012.  The Court previously found this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons below, the motion is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**FACTUAL ALLEGATIONS**

   Plaintiff filed this case in April 2012 to challenge the trustee's sale of her residence following foreclosure.  She refinanced

her property in August 2006, signing an Adjustable Rate Note (the "Note") and a Deed of Trust ("DOT"). (Compl. ¶ 7.) Washington Mutual Bank, FA ("WaMu") was identified as the lender in both documents and the "beneficiary under this Security Instrument" in the DOT, and California Reconveyance Company ("CRC") was designated as the trustee in the DOT. (Id. ¶ 8.) Plaintiff alleges that Chase wholly owns CRC, so CRC was an agent of Chase at all times. (Id. ¶ 9.)

As the gravamen of Plaintiff's Complaint, she alleges that, within 90 days after entering her mortgage, WaMu "securitized" her loan:

> WaMu sold and transferred Plaintiff's Mortgage Loan to EMC Mortgage Corporation, which collected the Mortgage Loan with numerous other loans into a Mortgage Pool and then, pursuant to the terms of a Pooling and Servicing Agreement ("PSA") dated October 1, 2006, purportedly sold and transferred it, along with all right, title and interest in it, to Structured Asset Mortgage Investments II, Inc., as Depositor under the PSA, for deposit into a REMIC investment trust identified as Structured Asset Mortgage Investments II Trust 2006-AR8 ("Investment Trust"), and thereafter the Mortgage Loan was a part of, or was subject to, a Loan Pool, the terms of the PSA, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, a Credit Default Swap, the Investment Trust, and/or a Special Purpose Vehicle. After said transfer of the Mortgage Loan, WaMu no longer owned the Note and DOT and was no longer the Lender nor Beneficiary under the Note and DOT, nor a holder of the Note.

(Id. ¶ 10.)

Chase acquired WaMu in September 2008. (Id. ¶ 11.) Plaintiff alleges that, because WaMu was no longer the lender or beneficiary under the Note and DOT due to the securitization, Chase did not acquire the Note and DOT on her property as part of the purchase of WaMu. (Id. ¶ 12.) Nevertheless, Chase notified Plaintiff that it was

2

now the servicer of Plaintiff's loan. (Id. ¶ 14.)

Plaintiff experienced financial trouble in 2008, so in October or November of that year she asked Chase if she might get a loan modification to lower her monthly payments. (Id. ¶ 18.) She was offered a loan modification at that time, but was told that she could not apply for it until she was delinquent on her loan payments for at least 60 days. (Id. ¶ 19.) Based on that advice, Plaintiff stopped making her loan payments. (Id. ¶ 20.) She went into default, and Chase initiated the foreclosure process in May 2009, which was eventually completed with the trustee's sale of Plaintiff's residence on April 25, 2011. (Id. ¶ 21, Ex. 6.)

Plaintiff asserts six causes of action against Chase arising from this foreclosure: (1) wrongful foreclosure; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) fraud; (5) quiet title; and (6) declaratory and injunctive relief.

**A.   Wrongful Foreclosure**

Plaintiff bases her wrongful foreclosure claim upon several alleged irregularities in the foreclosure process. First, Plaintiff claims that the foreclosure and trustee sale were invalid under California Commercial Code sections 3301 and 3309 because Chase was not the holder in due course of the note, so it had no authority to exercise the power of sale under the DOT or foreclose on Plaintiff's property, or direct CRC to do so. (Id. ¶ 24.)

Second, Plaintiff alleges that, because Chase lacked authority to foreclose, statements made in a May 26, 2009 Notice of Default ("NOD") were false and were not made under penalty of perjury in violation of California Civil Code sections 2015.5 and 2923.5. (Id. ¶¶ 26—28, Ex. 3.) The NOD stated that "the present beneficiary under [the DOT] has

3

executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." (Id., Ex. 3.)  Plaintiff claims this was false and misleading because CRC "never received delivery of the DOT and Note or any other documents showing that Chase was the beneficiary and entitled to payments under the Note." (Id. ¶ 27.)

Third, Plaintiff alleges that the Notices of Trustee's Sale recorded on August 26 and December 21, 2010 were invalid under California Code of Civil Procedure section 2015.5 because they did not contain declarations under penalty of perjury, did not state the place of execution, and were "robo-signed." (Id. ¶¶ 29—33, Exs. 4, 5.)

Fourth, Plaintiff alleges that the Trustee's Deed Upon Sale recorded on April 29, 2011 contained a false statement that Chase was the beneficiary of Plaintiff's DOT, when Chase no longer has an interest in the Note and DOT. (Id. ¶¶ 34—35, Ex. 6.)

**B.  Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing**

After Plaintiff stopped making payments on her loan, she engaged Chase in a possible loan modification. (Id. ¶¶ 38—40.)  In August 2009, Plaintiff entered a "Trial Plan Agreement" with Chase, which allowed Plaintiff to make monthly payments of $2,452.77 on 8/1/09, 9/1/09, and 10/1/09, so long as Chase received the initial payment and

4

signed Trial Plan Agreement by August 1, 2009. (Id. ¶ 40, Ex. 7.)[1] The plan provided that if these payments were not timely made, foreclosure activity would resume, which Plaintiff understood to mean that foreclosure activity would not be undertaken so long as she made timely payments; she also believed that Chase would make good faith efforts to evaluate and process her loan modification during this time. (Id.)

Plaintiff was ready to make her first payment on August 1, but Chase did not send the Trial Plan Agreement to her until August 13. (Id. ¶ 41.) She immediately signed it and sent it back with her first payment and a note explaining why it was late; she thereafter made timely monthly payments for 12 months, from August 2009 through July 2010. (Id. ¶ 41.)

At the end of those 12 months, Plaintiff became concerned that her lower monthly payments were causing the delinquent amount on her loan to grow, so she paid $4,000 for her August 2010 payment. (Id. ¶ 42.) However, Chase returned the payment on August 12, 2010, indicating that the funds were "insufficient to cure default," and required Plaintiff to submit a new application for a loan modification to start the process over. (Id. ¶ 43.) Two weeks later, Chase recorded the first Notice of Trustee Sale. (Id.) Nevertheless, over the next five months, the sale was postponed as Plaintiff attempted to comply with Chase's application process; Chase ultimately denied another loan modification on January 31, 2011. (Id. ¶ 44.)

Based on these facts, Plaintiff alleges that Chase breached the

---

[1] Plaintiff alleges that she did not have a signed copy of the agreement, so she attached an unsigned copy to her Complaint as Exhibit 7.

Trial Plan Agreement and breach the covenant of good faith and fair dealing.

**C.   Fraud**

Plaintiff adds no new factual allegations to this claim, but alleges that Chase foreclosed on her home with "oppression, fraud, and malice" and acted with "callous disregard of the significant damage to Plaintiff in denying her rights," justifying punitive damages. (Id. ¶ 51.)

**D.   Quiet Title**

As support for her claim to quiet title on her property pursuant to California Code of Civil Procedure section 760.020, Plaintiff alleges that she is the titleholder because WaMu, as the "lawful beneficiary under the loan" was paid in full after it securitized her mortgage as outlined in Paragraph 10 of the Complaint. (Id. ¶ 55.) This claim is based upon a paragraph in the DOT that stated:

> 23.   Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. . . .

(Id. ¶ 55, Ex. 2.)  Plaintiff asserts that, because the DOT did not specify that Plaintiff must pay off the mortgage, this paragraph was satisfied when WaMu was paid for her mortgage when it was securitized. (Id. ¶ 56.)

**E.   Declaratory and Injunctive Relief**

For this claim, Plaintiff seeks to have the foreclosure sale declared void; to force Chase to record recissions of Trustee's Deed

6

Upon Sale and related recorded documents; and to restrain Chase from filing any unlawful detainer action. (Id. ¶¶ 60–64.)

### F. Prayer for Relief

In addition to equitable relief that would effectively make Plaintiff the fee simple owner of her property, Plaintiff seeks $5 million in punitive damages and attorney's fees.

## LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 1949 (2009). A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and alterations omitted). Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party. See Newdow v. Lefevre, 598 F.3d 638, 642 (9th Cir. 2010), cert. denied, 131 S. Ct. 1612 (2011).

In analyzing the sufficiency of the complaint, the Court must first look at the requirements of the causes of action alleged. See Iqbal, 556 U.S. at 675. The Court may then identify and disregard any legal conclusions, which are not subject to the requirement that the

7

Court must accept as true all of the allegations contained in the complaint. Id. at 678. The Court must then decide whether well-pleaded factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." Id. at 679. In doing so, the Court may not consider material beyond the pleadings, but may consider judicially noticeable documents, documents attached to the complaint, or documents to which the complaint refers extensively or which form the basis of the plaintiff's claims in the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). To the extent attached documents contradict factual allegations in the body of the complaint, the documents control. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

**DISCUSSION**

**A.    Late Opposition**

Under the Local Rules, Plaintiff's opposition brief was due no later than 21 days before the hearing date on this motion, that is, May 28, 2012. Local Rule 7-9. Plaintiff did not file her opposition until May 30, and did not offer any explanation for why it was late. (Docket No. 13.) "The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." Local Rule 7-12; see also Ghazali v. Moran, 46 F.3d 52, 53—54 (9th Cir. 1995). Nonetheless, the Court will consider Plaintiff's opposition and address the challenges to her Complaint.[2]

---

[2] The Court has not considered several passages in Plaintiff's opposition that discuss an unrelated litigation against Chase, which are irrelevant to the pending motion. (Opp. 3—4.)

8

### B. Wrongful Foreclosure and Related Claims

As clarified in her opposition brief, in addition to certain irregularities in the foreclosure process, Plaintiff's wrongful foreclosure and related claims (fraud, quiet title, and declaratory and injunctive relief) rest on the premise that, when Chase securitized the mortgage, it was no longer the holder or beneficiary of the Note and could not validly direct CRC as Trustee to foreclose on Plaintiff's property. (Opp. 8.) Chase responds that in order to challenge the foreclosure sale on this or any other ground alleged in the Complaint, Plaintiff was required to tender the full amount owing on the Note. Plaintiff replies that, because her allegations, if true, would render the foreclosure sale void, and not merely voidable, the tender requirement does not bar her claims.

Plaintiff is correct that the law draws a distinction between a sale that is merely voidable, which triggers the tender rule, and a sale that is void, which does not trigger the tender rule. See <u>Dimock v. Emerald Props. LLC</u>, 81 Cal. App. 4th 868, 877–78 (2000); see also <u>Lona v. Citibank, N.A.</u>, 202 Cal. App. 4th 89, 113 (2011). However, even assuming Plaintiff can take advantage of this distinction to prevent the tender rule from barring her claim that Chase lacked authority to foreclose, Plaintiff has not plausibly alleged that Chase lacked the authority to initiate the foreclosure sale. Plaintiff's other alleged irregularities in the foreclosure sale render the sale merely voidable, and therefore are barred by the tender rule.

#### 1. Chase's Authority to Initiate Foreclosure Sale

Because the statutory scheme governing nonjudicial foreclosures in California creates a "'comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale

9

contained in a deed of trust,'" courts refuse to impose additional non-statutory requirements.  <u>Debrunner v. Deutsche Bank Nat'l Trust Co.</u>, 204 Cal. App. 4th 433, 440 (2012).  For example, courts have declined to create a requirement that a foreclosure sale must comply with the California Commercial Code regarding negotiable instruments, <u>see</u> <u>id.</u> at 440–41; a requirement that the foreclosing entity have "a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale," <u>Lane v. Vitek Real Estate Indus. Group</u>, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); or a requirement that the foreclosing entity produce the original note before initiating foreclosure, <u>see</u> <u>Debrunner</u>, 204 Cal. App. 4th at 442.  Moreover, under California Civil Code section 2924(a)(1), a notice of default may be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents," but this statute does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized" to do so.  <u>Gomes v. Countrywide Home Loans, Inc.</u>, 192 Cal. App. 4th 1149, 1155 (2011); <u>see also</u> <u>Robinson v. Countrywide Home Loans, Inc.</u>, 199 Cal. App. 4th 42, 46 (2011).[3]

---

[3] The parties dispute whether <u>Gomes</u> bars Plaintiff's allegations.  In <u>Gomes</u>, the court rejected the plaintiff's challenge under section 2924(a)(1) to the foreclosing entity's "authority to initiate the foreclosure because the current owner of the Note did not authorize [it] to proceed with the foreclosure."  192 Cal. App. 4th at 1152.  Some courts have declined to follow <u>Gomes</u> to bar claims that the note-holder — as opposed to the authorized foreclosing entity — lacked the power to initiate the foreclosure process.  In these cases, the issue was not "whether the company selling the property in the nonjudicial foreclosure sale was authorized to do so by the owner of the promissory note" as in <u>Gomes</u>, but whether the "wrong entity had initiated foreclosure."  <u>Wise v. Wells Fargo Bank, N.A.</u>, __ F. Supp. 2d. __, __, 2012 WL 1058887, at *2 (C.D. Cal. March 23, 2012); <u>see also</u> <u>Tamburri v. Suntrust Mortg., Inc.</u>, Case No. C-11-2899 EMC, 2011 WL 6294472, at *10 (N.D. Cal. Dec. 15, 2011) ("But the issue in <u>Gomes</u>

Here, Plaintiff's claim is barred for reasons already well-developed in foreclosure case law. First, Plaintiff alleges that, after Chase sold her mortgage as a security on the secondary mortgage market, it was no longer a holder in due course of the Note under California Commercial Code sections 3301 and 3309. As in Debrunner, however, the requirements of the Commercial Code do not apply to foreclosure proceedings. Second, even though Plaintiff has alleged that Chase did not have a beneficial interest in the Note following its securization, the Notice of Default and Notices of Trustee Sale expressly stated that Chase (denominated as WaMu) was a beneficiary under the DOT. (Compl., Exs. 3–5.) Plaintiff has not alleged any facts to plausibly suggest that the securitization of the Note eliminated all beneficial interest Chase had in the DOT. Thus, as in Lane, even if Chase did not have a beneficial interest in the Note to initiate foreclosure, it had an interest under the DOT, which was enough to direct CRC to initiate the sale.[4]

Courts have repeatedly rejected Plaintiff's theory that a lender and its agents lose the authority to initiate foreclosure proceedings when the "loan was packaged and resold in the secondary market, where it was put into a trust pool and securitized." Lane, 713 F. Supp. 2d

---

was not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner of the promissory note."); Sacchi v. Mortg. Elec. Reg. Sys., Inc., Case No. CV 11-1658 AHM (CWx), 2011 WL 2533029, at *7 (C.D. Cal. June 24, 2011). The Court need not decide whether Gomes applies to bar Plaintiff's claim because her claim fails for other reasons.

[4]Plaintiff does not challenge CRC's authority as trustee, although she attempts to draw a distinction between CRC's "power" to foreclose and "right" to foreclose. This argument is unintelligible and unsupported by any law.

11

at 1099; see also Nguyen v. Bank of Am. Nat'l Ass'n, Case No. 11-CV-3318 LHK, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15, 2011); Wadhwa v. Aurora Loan Servs., LLC, Case No. S-11-1784 KJM KJN, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011); Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009). In this circumstance, the Note is merely sold as an asset giving investors an interest in the cash flow from the Note. Jones v. Countrywide Homeloan, Case No. CV F 11-0405 AWI JLT, 2011 WL 2462845, at *5 (E.D. Cal. June 17, 2011). "It does not follow that any of the other entitlements of the lender of the Deeds of Trust, including the power to declare default, are transferred or lost because of the transfer or sale of the cash flow due from the mortgage." Id.

Therefore, Plaintiff's wrongful foreclosure claim on this ground fails as a matter of law.

### 2. Other Irregularities in the Foreclosure Process

Plaintiff's remaining allegations of irregularities in the foreclosure process, such as false statements in the NOD, the lack of proper declarations under Code of Civil Procedure section 2395.5, and the failure of CRC to receive a copy of the DOT, would only render the foreclosure sale voidable, not void. See Little v. CFS Serv. Corp., 188 Cal. App. 3d 1354, 1358 (1987) (defining voidable defects as "irregularities in a sale," as compared to void defects that would render the sale a nullity at the outset). Because the sale is only voidable on these grounds, Plaintiff "must tender any amounts due under the deed of trust." Dimock, 81 Cal. App. 4th at 877; Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984). Moreover, "[a] cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."

Arnolds, 158 Cal. App. 3d at 579 (affirming dismissal of wrongful foreclosure, fraud, and negligence claims because plaintiff failed to tender); Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 121 (1971) (affirming dismissal of claim to set aside trustee's sale, breach of oral agreement, accounting, and constructive trust because plaintiff failed to tender).

Plaintiff has not alleged that she can tender the full amount of her outstanding loan and has not suggested in her opposition that she could amend her complaint to do so. Indeed, she only opposes Chase's tender argument by claiming that the sale was void, which the Court has rejected above. The Court also doubts she could plausibly allege tender, given that she defaulted on her loan due to financial issues and had no equity in her property. (Compl. ¶ 16.)

As a result, Plaintiff's wrongful foreclosure claim is barred, as are her claims for fraud, quiet title, and declaratory and injunctive relief, all of which are "implicitly integrated" with her challenges to the foreclosure sale.

**C.  Breach of Contract Claim**

To state a breach of contract claim, a plaintiff must allege (1) a valid contract, (2) performance by the plaintiff or excuse for nonperformance, (3) defendant's breach, and (4) damages. Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 830 (1968). The thrust of Plaintiff's contract claim rests on her allegations that the Trial Plan Agreement bound Chase to (1) offer her a loan modification and (2) refrain from foreclosure activities so long as she made timely payments under the agreement.[5] Neither theory states a plausible

---

[5]In her opposition brief, Plaintiff raises a third theory: Chase failed to offer a loan modification in violation of the Home

13

claim for relief.

Plaintiff's allegation that Chase breached the Trial Plan Agreement by not offering her a loan modification fails based on the plain terms of the Trial Plan Agreement itself, which was attached to the Complaint. The agreement did not guarantee that Plaintiff would receive a loan modification; rather, it promised only that, "[i]f all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." (Compl., Ex. 7.) And Plaintiff alleges that Chase fulfilled this obligation by considering — and denying — a loan modification on January 31, 2011. (Id. ¶ 44.) Therefore, Chase did not breach the Trial Plan Agreement by refusing to modify Plaintiff's loan.

Plaintiff's alternate theory that Chase breached the Trial Plan Agreement because it undertook foreclosure activities while she made timely payments under the agreement also fails. The Trial Plan Agreement provides only for modified payments for three months — August, September, and October 2009 (even though Plaintiff continued those payments for a year) — and "[a]ll of the original terms of [Plaintiff's] loan remain in full force and effect." (Id., Ex. 7.) Thus, even if the Trial Plan Agreement obligated Chase to refrain from foreclosure activities, that obligation lasted only for those three months and after that Chase was entitled to foreclose as provided in the DOT and Note. Plaintiff has not alleged that any foreclosure activities were conducted during those three months and the alleged

---

Affordable Modification Program. However, there is no private right of action under the program. See, e.g., Aleem v. Bank of Am., N.A., Case No. EDCV 09-1812 VAP (RZx), 2010 WL 532330, at *3 (C.D. Cal. Feb. 9, 2010).

14

time line of the foreclosure indicates otherwise: CRC did not record the first Notice of Trustee's Sale until August 2010, a year after the first payment under the Trial Plan Agreement was due. Thus, Plaintiff has failed to allege a plausible breach of contract claim on this basis.[6]

### D. Breach of Implied Covenant of Good Faith and Fair Dealing

While every contract contains an implied covenant that the parties will not "do anything which will deprive the other . . . of the benefits of the contract" and will do everything necessary to accomplish the contract's purpose, "[t]he implied covenant of good faith and fair dealing does <u>not</u> extend beyond the terms of the contract at issue." <u>Poway Royal Mobilehome Owners Ass'n v. City of Poway</u>, 149 Cal. App. 4th 1460, 1477 (2007) (emphasis in original). Further, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1395 (1990).

Plaintiff's claim for breach of the implied covenant is superfluous because it merely duplicates her invalid claim that Chase breached the Trial Plan Agreement by instituting foreclosure proceedings while the agreement was in effect. Thus, this claim must be dismissed.

### E. Remaining Claims

Chase has identified myriad other defects in Plaintiff's

---

[6]The Court need not address Chase's alternate argument that Plaintiff's contract claims are barred by the statute of frauds.

remaining claims for fraud, quiet title, and injunctive and declaratory relief. However, Plaintiff concedes that these claims "flow from and are supported by the factual allegations in the first two causes of action" for wrongful foreclosure and breach of contract. (Opp. 5.) Because her first two claims must be dismissed, these claims will also be dismissed.

In any case, Plaintiff's remaining claims fail on their merits. For example, Plaintiff's fraud claim fails because she has not alleged how she relied on or was damaged by any alleged misrepresentation by Chase. See Hahn v. Mirda, 147 Cal. App. 4th 740, 748 (2007) (outlining the requirements for fraud, including that the plaintiff "would not have acted as he did if he had known of the concealed or suppressed fact" and "must have sustained damage."). Plaintiff defaulted on her loan because she was experiencing financial trouble, not because she relied on any misrepresentation by anyone involved in the foreclosure proceeding. Even now she does not claim that she could tender the amount owing under the Note if she were to prevail on her fraud claim against Chase, suggesting that she was not damaged by any alleged misrepresentation. Cf. Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 272 (2011) (finding no prejudice to the plaintiff from the lack of authority by assignee to foreclose because plaintiff "effectively concedes she was in default, and she does not allege that the transfer to [the assignee] interfered in any manner with her payment of the note . . . .").

Plaintiff's quiet title claim fails because she has not alleged that she can pay off her debt, see Pedersen v. Greenpoint Mortg. Funding, Inc., Case No. S-11-0642 KJM EFB, 2011 WL 3818560, at *13 (E.D. Cal. Aug. 29, 2011), and because her theory that the Note was

16

fully paid when it was securitized is wrong as a matter of law, <u>see, e.g.</u>, <u>Rosas v. Carnegie Mortg., LLC</u>, Case No. CV 11-7692 CAS (CWx), 2012 WL 1865480, at *7–8 (C.D. Cal. May 21, 2012).

Finally, Plaintiff's claim for declaratory and injunctive relief fails because it lacks a meritorious predicate claim. <u>See, e.g.</u>, <u>Hafiz</u>, 652 F. Supp. 2d at 1043 (explaining that declaratory relief requires weighing the underlying claims); <u>id.</u> at 1049 (noting that injunctive relief is a remedy that relies on underlying claims).

## CONCLUSION

The Court GRANTS Chase's motion and DISMISSES all of Plaintiff's claims. Because Plaintiff cannot plead new facts without contradicting her current allegations, amendment would be futile. <u>See Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Therefore, the Court will not grant leave to amend and dismisses the Complaint WITH PREJUDICE. **Chase is ORDERED to lodge a proposed judgment dismissing this case within 10 days of the date of this Order.**

**IT IS SO ORDERED.**

DATED: June 14, 2012    _____

AUDREY B. COLLINS
CHIEF UNITED STATES DISTRICT JUDGE

17